Quigley, Appellant, v. Village of Blanchester, Appellee.

[Cite as Quigley v. Blanchester, 16 Ohio App. 2d 104.]

(No. 231—Decided August 26, 1968.)

*Messrs. Nichols, Speidel & Nichols,* for appellant.
*Mr. Lawrence R. Lyons,* for appellee.

Long, P. J. This case comes to this court as an appeal on questions of law from the Common Pleas Court of Clinton County. On August 9, 1965, charges were filed by the Mayor of Blanchester against appellant who was at the time a patrolman on the police force of the village of Blanchester. The charges alleged that appellant had violated the provisions of ordinance No. 350 adopted by the village February 3, 1965. The ordinance provides as follows:

"Be It Ordained by the Council of the Village of Blanchester, Ohio, to-wit:

"Section 1.

"(a) All new members of the Police Department, including the Chief, shall be subject to a physical examination, and such report thereof must be satisfactory to the appointing authority.

"(b) All future officers and members of the Police Department, including the Chief, shall be required to reside

in or within two miles of the Village to be eligible for appointment.

"SECTION 2.

"All present officers of the Police Department, including the Chief of Police, who are not residents of the Village of Blanchester, must become residents or establish their residence within two miles of said Village within six months of the effective date of this ordinance in order to continue to hold their said positions.

"SECTION 3.

"This ordinance is hereby declared to be an emergency for the purpose of providing speedy and effective protection of the Village and the inhabitants thereof, and for peace and good order and shall be effective immediately.

"Passed this 3rd day of February, 1965.

"HARRY PATTERSON, Mayor

"Attest:

"J. R. Murphy, Clerk."

At the time of the passage of the ordinance appellant had been a policeman on the force for some eight years but was resident some twenty miles outside the village limits. Incidentally, appellant was the only officer immediately affected by the ordinance.

In accordance with the terms of the ordinance, notice was given to appellant to move into the village within six months. Due to family conditions, namely, the fact that he was then living on a farm with his wife and elderly father, he notified the mayor of Blanchester that he would not comply with the terms of the ordinance.

Appellant was charged with violation of the ordinance, and council, at a meeting called for the purpose, found appellant guilty by a unanimous vote of the members. Appellant was removed as a policeman for failure to comply with the ordinance.

Appellant lost his appeal which was filed with the council on questions of law and fact as provided by Section 737.171 of the Revised Code, and appeal was then perfected in the Court of Common Pleas of Clinton County, Ohio. The case was heard on the transcript of the evidence taken

before the council of the village, by agreement of the parties, and resulted in a judgment in favor of the village of Blanchester and against the appellant. From that judgment appeal on questions of law is taken to this court.

In order to understand the law involved in cases of this kind, we must briefly examine the source and scope of municipal police power as we find it today. For many years in Ohio, at least in its formative period, the broad expanse of governmental power was vested in the state. During that period, cities and villages received their powers from the Legislature; however, in 1912, the constitutional convention conceived the idea of home rule, and ever since the state has been divesting itself of power in favor of municipalities. The people have made a new distribution of government power which finds its validity in the Constitution itself and not in the enactments of the Legislature.

Article XVIII of the Constitution of Ohio, in Section 3, provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Section 3 of ordinance No. 350 of the village provides as follows:

"This ordinance is hereby declared to be an emergency for the purpose of providing speedy and effective protection of the Village and the inhabitants thereof, and for peace and good order and shall be effective immediately."

With all the violence and rioting which has been happening on the streets in our communities, the passage of the instant ordinance as an emergency sounds like good law and is in all respects a proper enactment of sound municipal police power vested in it by the Constitution of Ohio. No one would doubt that a police officer should be available upon call for any emergency. The ordinance provides for "speedy and effective protection" of its inhabitants. It is equally clear that a policeman who lives twenty miles from the village might find it difficult to re-

spond for such protection. On this point we quote the testimony of the Chief of Police:

"Q. From your experience as a police officer, might you have anything to say about the advisability of such an ordinance from the standpoint of police protection of the village of Blanchester? A. Well, on several occasions, I had to use more men closer in rather than to call Mr. Quigley [appellant]. His address in the phone book is New Vienna. I have called Mr. Quigley a couple of times and didn't get any answer. One other time, I believe, Mr. Quigley's father couldn't hear very well so I didn't get in contact with him at that time. I have called and got in touch with Mrs. Quigley and she delivered the message and he didn't come in."

It seems to the court that the prohibition in the ordinance as to residence is reasonable, when we look at unpredictable emergencies inherent in police work. If an officer is a resident of the village, he is the more easily contacted for duty than when he is twenty miles away.

Coming to appellant's claim of vested right in his job we think the law is well settled on this subject. No office is held in this country as the result of contract or grant; nor does such person have a vested interest or right of property in such job. True, under civil service, by statute. your job lasts until charges against you are sustained which warrant your dismissal, but appellant is not under civil service. In 44 Ohio Jurisprudence 2d, Public Officers, Section 11, we read: "In other words, the power to create an office includes the power to destroy it, or *to provide as to the circumstances under which it shall be held or shall be deemed vacant.*" (Emphasis added.) See *Steubenville* v. *Culp,* 38 Ohio St. 18, 43 Am Rep. 417.

Much is said by appellant that the ordinance is discriminatory against him because he is the only officer affected. This is merely coincidental. It makes no difference in this case. The ordinance applies to all other officers in the same class as appellant. It is not personally directed at appellant, and there is not a syllable of testimony of any ulterior motives against him. As a matter of fact, all mov-

ers in the enforcement of the ordinance openly stated that they were acting with regret.

The last error claimed by appellant is that the Common Pleas Court found no act of guilt by him in the performance of his work as a policeman. He restricts this to his duties while on his beat as a policeman. He overlooks the fact that the court did find him guilty, by his own admission, of refusal to change his residence from New Vienna, twenty miles distant, to Blanchester, where he was employed as a policeman.

In conclusion, we find the ordinance in question is a reasonable exercise of the police powers of the village of Blanchester under the Constitution of Ohio and, further, that the errors claimed by the appellant are without merit.

*Judgment affirmed.*

HILDEBRANT and SHANNON, JJ., concur.