The CITY AND COUNTY OF DENVER, Petitioner,

v.

The INDUSTRIAL COMMISSION OF the STATE OF COLORADO, and Patricia Wood, Respondents.

No. 82CA1007.

Colorado Court of Appeals, Div. III.

May 19, 1983.

Max P. Zall, City Atty., Stan M. Sharoff, Asst. City Atty., Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Robert Lehnert, Asst. Atty. Gen., Denver, for respondent Industrial Com'n of the State of Colo.

Frank X. Dwyer, Denver, for respondent Patricia Wood.

SILVERSTEIN *, Judge.

The City and County of Denver seeks review of a final order of the Industrial Commission which awarded full unemployment compensation benefits to respondent Patricia E. Wood. We set aside the order.

Wood was employed by the City as a police officer on February 1, 1979. At that time the Denver City Charter § C5.12–1, as pertinent here, provided:

> "Notwithstanding any other provision of this Charter ... all permanent and temporary officers and employees of the City and County of Denver, including those employed within the career service and the classified service of the police and fire departments ... who are appointed or employed on or after January 1, 1979, shall as a condition · of their continued employment, reside within the corporate boundaries of the City and County of Denver, within three months after acquiring permanent status."

This provision was enacted by popular vote of the citizens of Denver on September 12,

---

\* Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* Art. VI, Sec. 5(3) and § 24–51–607(5), C.R.S.1973 (1982 Cum.Supp.).

1978. A regulation of the police department contained the same requirement.

At the time of her employment, Wood was advised of this condition. She lived in the City from the commencement of her employment until the fall of 1980 when she was married and moved to Littleton to live with her husband. Her husband was also a police officer for the City, and had been so employed prior to January 1, 1979. He, therefore, was not subject to the residence requirement.

When the police department learned of her move, Wood was advised that she would have to re-establish residency in Denver within three months or she would be terminated. Being unwilling to accept either alternative, Wood resigned. In her letter of resignation, she stated, "Conflicts resulting from my recent marriage have forced me to make this decision." She then filed a claim for unemployment compensation.

A deputy of the Division of Employment and Training determined that claimant had quit the job "for personal reasons" and awarded reduced benefits "under the authority of Section 8–73–108(8)" C.R.S.1973 (1982 Cum.Supp.). On appeal, the referee reversed the decision of the deputy, and awarded claimant full benefits under § 8–73–108(4), C.R.S.1973 (1982 Cum.Supp.). The Industrial Commission affirmed the decision of the referee. In its petition here, the City requests that the deputy's decision be reinstated.

It is undisputed that Wood's work was satisfactory, and that her moving outside the City limits did not render her work less satisfactory. The referee concluded that there was no logical reason for the rule. In affirming, the Commission concluded that the residency rule was not material to claimant's performance. The referee and the Commission both held that the separation occurred through no fault of claimant, and that she was therefore entitled to the full award. We disagree.

■ The evidence does not support the conclusion that the separation was through no fault of claimant. The word "fault" as used in unemployment security situations "is not limited to something worthy of censure but must be construed as meaning failure or volition." *Wolf's v. Iowa Employment Security Commission,* 244 Iowa 999, 59 N.W.2d 216 (1953); *Walter Bledsoe Coal Co. v. Review Board of Employment Security,* 221 Ind. 16, 46 N.E. 477 (1943).

■ "[E]mployment with the Denver Police Department is governed by the provisions of the Denver City Charter." *Spickard v. Civil Service Commission,* 31 Colo. App. 450, 505 P.2d 32 (1972). Thus, the charter is part of the employment contract. Hence, the evidence discloses that claimant knowingly and voluntarily breached the terms of her employment contract, and violated a regulation of the police department and a charter provision. Thus, claimant's voluntary violation of the charter requirement which was a condition of employment, constituted fault on her part.

■ Further, the determination that the residency restriction is not logical or material impliedly renders the requirement invalid. Such a determination is outside the scope of the Commission's duties, and is an issue appropriately resolved in a court of law. *See School District No. 11–J v. Howell,* 33 Colo.App. 57, 517 P.2d 422 (1974).

■ In determining the validity of such a provision, the challenged restriction, as with other classifications, must bear a rational relationship to one or more legitimate governmental purposes. *See People v. Chavez,* 629 P.2d 1040 (Colo.1981).

Residence requirements for municipal employment imposed by charters and city ordinances have almost uniformly been held valid and enforceable as bearing a rational relationship to governmental purposes. One of the earliest cases upholding a residency requirement for policemen is *Johnson v. State,* 132 Ala. 43, 31 So. 493 (1901). Since then, many other jurisdictions have also upheld such requirements for policemen and firemen. *See, e.g., McCarthy v. Philadelphia Civil Service Commission,* 19 Pa.Cmwlth. 383, 339 A.2d 634 (1975); *In re Gagliardi's Appeal,* 401 Pa. 141, 163 A.2d

418 (1960); and *Kennedy v. City of Newark,* 29 N.J. 178, 148 A.2d 473 (1959).

One of the purposes cited as supporting such a requirement is "to have those whom [the municipality] helps clothe and feed participate in and contribute support and taxes for its benefit, not for that of cities elsewhere." *Salt Lake City Fire Fighters Local v. Salt Lake City,* 22 Utah 2d 115, 449 P.2d 239 (1969). Another reason for the requirement is the "unpredictable emergencies inherent in police work." *Quigley v. Village of Blanchester,* 16 Ohio App.2d 104, 242 N.E.2d 589 (1968).

We agree with the rationale of the foregoing cases, and hold that the charter provision and the regulation are valid and binding. Acting for her own reasons, claimant voluntarily and knowingly violated this provision of her contract. Hence, the separation was due to her own fault. Therefore, the decision of the deputy was correct.

The order of the Commission is set aside, and the cause is remanded with directions to enter an award under § 8–73–108(8), C.R.S.1973 (1982 Cum.Supp.).

VAN CISE and KELLY, JJ., concur.