26CA0271 Hale v ICAO 05-21-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 26CA0271
Industrial Claim Appeals Office of the State of Colorado
DD No. 22759-2025

Angel Hale,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado,

Respondent.

ORDER AFFIRMED

Division V
Opinion by JUDGE YUN
Lipinsky and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

Angel Hale, Pro Se

No Appearance for Respondent

¶ 1     In this unemployment insurance benefits case, Angel Hale appeals the final order of the Industrial Claim Appeals Office (the Panel) disqualifying her from receiving benefits following her job separation from Bread Financial (the Employer).  We affirm.

## I.     Background

¶ 2     Hale was employed as a Senior Account Specialist for the Employer from October 2019 until July 2025, when her employment was terminated.  After she applied for unemployment benefits, a deputy with the Division of Unemployment Insurance determined that she was disqualified from receiving benefits under section 8-73-108(5)(e)(XX), C.R.S. 2025 for failing to meet established job performance or other defined standards.

¶ 3     Hale appealed the deputy's decision.  After an evidentiary hearing, a hearing officer reversed the deputy's decision and awarded benefits.  The Employer then appealed to the Panel, which reversed the hearing officer's decision and disqualified Hale from receiving benefits under section 8-73-108(5)(e)(XIV) for rudeness, insolence, or offensive behavior that would not reasonably be tolerated by a customer, supervisor, or fellow worker.  We affirm the Panel's order.

## II.    Legal Principles and Standard of Review

¶ 4    "[U]nemployment insurance is for the benefit of persons unemployed through no fault of their own." § 8-73-108(1)(a).  For purposes of the unemployment statutes, "fault" only requires "a volitional act or the exercise of some control or choice in the circumstances leading to the discharge from employment such that the claimant can be said to be responsible for the termination." *Richards v. Winter Park Recreational Ass'n*, 919 P.2d 933, 934 (Colo. App. 1996).

¶ 5    Whether a claimant is at fault for separation from employment is an ultimate legal conclusion that we review de novo.  *Mesa Cnty. Pub. Libr. Dist. v. Indus. Claim Appeals Off.*, 2017 CO 78, ¶ 17.  If the evidence "arguably might support the application of more than one section of the Employment Security Act, . . . the Panel has wide discretion in determining which section it will apply."  *Sch. Dist. No. 1 v. Fredrickson*, 812 P.2d 723, 725 (Colo. App. 1991).

¶ 6    As relevant here, we will uphold the Panel's decision unless the findings of fact do not support the decision or the decision is erroneous as a matter of law.  § 8-74-107(6)(c)-(d), C.R.S. 2025.

### III. Proceedings Below

¶ 7 Although the deputy initially determined that Hale was disqualified from receiving unemployment benefits for failing to meet established job performance or other defined standards, the hearing officer focused on the Employer's argument that Hale should be disqualified under section 8-73-108(5)(e)(VII). That section disqualifies a worker who violates a company rule that "resulted or could have resulted in serious damage to the employer's property or interests or could have endangered the life of the worker or other persons." *Id.* The hearing officer concluded that Hale did not "cause damage to the customer's experience" and awarded benefits.

¶ 8 The Panel disagreed and disqualified Hale from benefits under section 8-73-108(5)(e)(XIV). In doing so, the Panel cited the following undisputed facts: After a customer yelled curse words at Hale during a phone call, Hale responded, "You and your momma. I'm done speaking with you. I hope you have the day that you deserve," and then disconnected the call.

¶ 9 The Panel concluded that those comments seriously damaged the Employer's interest. The Panel further concluded that Hale's

comments to the customer were not merely unprofessional, as the hearing officer determined, but were rude and offensive.

## IV.    Analysis

¶ 10    Hale asserts that her comments were not a serious violation because other employees used worse language, including profanity, during calls to customers.  But section 8-73-108(5)(e)(XIV) is not limited to circumstances involving the use of explicit obscenity or profanity.  *See Olsgard v. Indus. Comm'n*, 548 P.2d 910, 911 (Colo. 1976) (affirming disqualification from benefits where a claimant was discharged after stating, in the presence of other employees, that the next time he was sick he would "puke right in (the owner's) face").  Moreover, any alleged misconduct by other employees does not absolve Hale of responsibility for her own conduct.

¶ 11    Hale further argues that she was in a senior staff position handling "escalated calls" and that "escalated teams can release calls when the customer is excessively swearing or . . . sexist, discriminatory, racist or belligerent."  But Hale did not simply disconnect this particular call.  Instead, as she admitted, she "did end up losing [it] a little bit, and [she] said, 'your mama' because he kept repeatedly screaming in [her] ear, 'F you.'"

4

¶ 12    She acknowledged that, under the Employer's policy, she was required to let the customer know that she was disconnecting before actually disconnecting the call.  During the call at issue, she told the customer, "If you keep swearing at me, I'll hang up the phone."  But instead of stopping there and disconnecting, Hale made the comments noted above.  She admitted that she "blew up at [the customer], said 'your mama,' and hung up the phone."

¶ 13    Hale also admitted that she was aware of the Employer's code of conduct, which stated that failing to meet expectations included treating a customer "unprofessionally."  The code of conduct also provided that a violation could result in discipline, including termination of employment.  The code of conduct was an exhibit at the hearing, along with Hale's acknowledgment that she had recently read it.

¶ 14    In *Davis v. Industrial Claim Appeals Office,* 903 P.2d 1243 (Colo. App. 1995), a division of this court held:

> [I]n assessing the reasonableness of an employer's termination of an employee for behavior implicating § 8-73-108(5)(e)(XIV), the Panel must consider the facts and circumstances of the individual case to determine, in the exercise of its independent judgment, whether a reasonable person in the

> position of a customer, supervisor, or fellow worker would have considered the employee's behavior to have been rude, insolent, or offensive such as not reasonably to be countenanced.

*Id.* at 1244-45.

¶ 15     Because an objective standard applies to whether Hale's comments are disqualifying, we discern no error in the Panel's independent judgment that a reasonable person in the position of a customer would have viewed Hale's comments as rude, insolent, or offensive.

¶ 16     Finally, Hale argues that she was disciplined more severely than other employees and was unfairly terminated rather than given a warning.  But even if true, in the context of unemployment benefits, the key question is whether "any violation of [an employer's] discipline policy" affected Hale's ability "to act volitionally with respect to [her] discharge."  *Keil v. Indus. Claim Appeals Off.* 847 P.2d 235, 238 (Colo. App. 1993).  We conclude that Hale acted volitionally when she chose to respond to the customer the way she did, rather than according to the Employer's policy.  *See Richards,* 919 P.2d at 934 (disqualification from benefits

only requires a volitional act or some exercise of control or choice in the circumstances leading to discharge).

## V.    Disposition

¶ 17    We affirm the Panel's order.

JUDGE LIPINSKY and JUDGE SCHUTZ concur.